Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Sorge,<br><br>                 Plaintiff,<br><br>v.<br><br>Yelp Inc.,<br><br>                 Defendant. | No. 2:17-cv-04518-SMM<br><br>**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT** |

### I.     INTRODUCTION

Less than 24 hours after Plaintiff Joseph Sorge complained about the repeat loud playing of a song with the lyrics "faggot" and "Homey you a bitch you got feminine ways/Heard you got four lips and bleed for seven days" to his Yelp manager Matthew Susa, he was terminated. Under the law in this Circuit, the inference of such a quick termination is that Mr. Sorge experienced retaliation for this protected activity - a conclusion supported by the fact that his manager Mr. Susa was dismissive and utterly rejected his complaint despite Yelp's clear "no harassment" policy – and that Yelp's attempted justification for the termination is pretext. Yelp barely references the central fact in this case; namely, Mr. Sorge's complaint to his manager Matthew Susa the day before he was terminated. Yelp further attempts to obscure the timeline of events in its hearsay-laden statement of facts. The Motion should be denied.

### II.     MATERIAL UNDISPUTED FACTS IN THE DEFENDANT'S STATEMENT OF FACTS:

1. Sorge worked for Yelp and was supervised by Matthew Susa.
2. Yelp has a broad and clearly-worded "no tolerance" policy for harassment on the basis of, *inter alia*, sex, gender, gender identity, gender expression, and sexual orientation.



3. The policy prohibits, inter alia, "verbal conduct such as epithets, derogatory jokes or comments, slurs or unwanted sexual advances, invitations or comments" and "[r]etaliation for reporting or threatening to report harassment."

4. The song "Straight to the Bank" (which includes the offensive song lyrics described in the Introduction) would play at least one during each work day to acknowledge the sales by the team who chose that song as their "theme song."

5. Mr. Susa, with his supervisor Ms. Kennedy, coached Mr. Sorge during the morning of June 16, 2016.

6. Mr. Sorge attended a large team-wide training event that did not end until late afternoon.

7. Yelp fired Mr. Sorge on the morning of June 17, 2016.

8. During his termination meeting, Mr. Sorge reported the offensive song and his manager's repeated use of profanity to team members to HR.

9. Mr. Sorge is a straight man, and was greatly offended by the song lyrics as described and believed them to be offensive to homosexuals and women and, as used in the song, insults by the rapper to a straight man that the rapper apparently deems less than "manly."

10. Susa was part of the decision to terminate Mr. Sorge.

11. The termination document says that Mr. Sorge was "Not a good Cultural Fit."

### III.    MATERIAL DISPUTED FACTS:

1. The offensive song "Straight to the Bank" was played loudly and repeatedly throughout each work day whenever any member of the team who chose that song as their "theme song" would make sales.

2. Sorge complained about the song to his manager Matthew Susa midday on June 16, 2016, the day before he was terminated.

3. Susa rejected the complaint and was dismissive of the complaint saying it was "company culture" to play a song after a sale was completed and that Sorge needed to "get over it."



4. Sorge did not behave "disrespectfully" towards his supervisors.

5. Sorge was not given any opportunity to actually implement the coaching he received the day before his termination (the same day he complained about the song).

6. Sorge did not say "run while you can" to anybody seated in the lobby after the training.

## IV.   STANDARD OF REVIEW

Yelp omitted a crucial element of the Rule 56 summary judgment standard: a "genuine issue" of material fact will <u>only</u> be absent if, upon "viewing the evidence and inferences which may be drawn therefrom <u>in the light most favorable to the adverse party</u>," the movant is still clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977) (emphasis added). Or as the Supreme Court restated it: "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 188 L. Ed. 2d 895, 901 (2014)(citing *Brosseau v. Haugen*, 543 U. S. 194, 195, n. 2, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)); *see also Woodruff v. Peters,* 482 F.3d 521, 526 (D.C. Cir. 2007) ("As employers rarely maintain records directly evidencing discrimination, an added measure of rigor, or caution, is appropriate in applying this standard to motions for summary judgment in employment discrimination cases.")(quotations omitted). Because credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor at the summary judgment stage. *Walters v. Odyssey Healthcare Management Long Term Disability Plan*, 2014 WL 4371284, *3 (D. Ariz. Sept. 4, 2014) (internal citations and quotations omitted). Furthermore, summary judgment is not appropriate if a party's knowledge or state of mind is at issue because the resolution of such issues is a jury function. *Id.* (and cases cited). The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citing *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410-11 (9th Cir. 1996)); *see also Chuang v. University of California Davis Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("the plaintiff in an



1 employment discrimination action need produce very little evidence in order to overcome an
2 employer's motion for summary judgment.").

3 **V.   THE HOSTILE WORK ENVIRONMENT CLAIM SURVIVES**

4       Yelp cites a few older cases for the proposition that Sorge cannot complain about sexual
5 misconduct because he is not a member of the protected class; i.e. he is neither a "faggot" nor a
6 "bitch with feminine ways" and therefore must be unaffected by such offensive language. MSJ at
7 7. Amazingly, Yelp could not bring itself to even admit that such language would violate its own
8 "no tolerance" policy against harassment. Plaintiff's Response to Defendant's Separate
9 Statement of Facts ("Resp. to SOF") at ¶ 94 (Sorge Decl. ¶ 47, Ex. E – Admissions Nos. 2-6).
10 Yelp is clearly behind the times on what constitutes an abusive and hostile environment. There
11 are two major problems with Yelp's argument. First, Sorge is more than a "bystander" – he was
12 subjected to incredibly offensive language several times a day while he worked for Yelp. Resp. to
13 SOF at ¶ 63. He counts both women and homosexuals among his family and friends, and was
14 embarrassed to be hearing those lyrics with women in the workplace. *Id.* at ¶¶ 8, 58-71.
15 Furthermore, the context of the song lyrics make it clear that the rapper is actually using the
16 offensive lyrics to insult an otherwise straight man (a "homey"), who apparently has a "wife on a
17 futon." Sorge Decl. ¶ 7. The race of the targeted insultee is not specified.

18       Second, Yelp itself incorporates the "no tolerance" policy for the benefit of not just those
19 directly within a particular class, but also to those "associated" with anyone in a protected class.
20 Sorge Decl., Ex. B. When Sorge complained about the song on June 16, he made it clear to Susa
21 that a) he personally found it offensive; and b) he was making that complaint on behalf of women
22 and homosexuals. Resp. to SOF ¶ 95 (Sorge Decl. ¶¶ 11-16).

23       The real shame in Yelp's argument is that, carried to its logical conclusion, there is
24 apparently <u>no amount</u> of sexually explicit or demeaning lyrics that can ever create a hostile
25 environment for a straight white man. The equivalent would be a song constantly blasting the "n
26 word" (perhaps another cut from a 50 Cent album?) in a room full of Caucasians – would nobody
27 in that room be allowed to argue that this was a "racially hostile" environment in violation of Title
28 VII? Yelp's argument says "no" to such an idea and argues that Sorge "must" be a member of

the underlying class affected by the lyric. Even if Yelp is correct in the race context, this is not actually the law for a hostile environment based on sex where the allegations are a sexually hostile environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (explaining that the "phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment"). "To be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 443 (9th Cir., 2017)(quoting *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016)(internal quotation marks omitted)). In particular, hostile environment cases based on sex do not require evidence that the treatment was motivated by sexual desire and <u>the treatment need not to be sex specific.</u> *See id.* at 446 (citing *Geo Grp., Inc.*, 816 F.3d at 1207 n. 12); *see also Boumehdi v. Plastag Holdings, LLC.*, 489 F.3d 781, 788 (7th Cir. 2007) (stating that though "most of [harasser]'s alleged comments were sexist rather than sexual, our precedent does not limit hostile environment claims to situations in which the harassment was based on sexual desire").

Plaintiff posits that the "zone of interests" protected by Title VII, which permits any "aggrieved" party to file a charge with the EEOC and then proceed to court upon receiving a notice of suit rights, encompasses the claim that his environment was hostile as a result of the employer tolerating sexually explicit and demeaning lyrics *regardless of sex or sexual orientation*. The Supreme Court has already applied this reasoning to the anti-retaliation provisions:

> We have held that this language establishes a regime under which a plaintiff may not sue unless he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). We have described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). We hold that the term "aggrieved" in



Title VII incorporates this test, enabling suit by any plaintiff with an interest "arguably [sought] to be protected by the statute," *National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 495, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (internal quotation marks omitted), while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.

*Thompson v. N. Am. Stainless, LP.*, 562 U.S. 170, 177-78, 131 S. Ct. 863, 178 L.Ed.2d 694 (2011).

The Supreme Court has taken this reasoning even further and protected men, not just women, from sexually hostile work environments under Title VII in an opinion worth quoting at length for its direct applicability to this case:

Title VII's prohibition of discrimination "because of . . . sex" protects men as well as women, *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682, 103 S.Ct. 2622 2630, 77 L.Ed.2d 89 (1983), and in the related context of racial discrimination in the workplace we have rejected any conclusive presumption that an employer will not discriminate against members of his own race. "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group." *Castaneda v. Partida*, 430 U.S. 482, 499, 97 S.Ct. 1272 1282, 51 L.Ed.2d 498 (1977). *See also id.*, at 514 n. 6, 97 S.Ct., at 1290 n. 6 (Powell, J., joined by Burger, C.J., and Rehnquist, J., dissenting). In *Johnson v. Transportation Agency, Santa Clara Cty.*, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), a male employee claimed that his employer discriminated against him because of his sex when it preferred a female employee for promotion. Although we ultimately rejected the claim on other grounds, we did not consider it significant that the supervisor who made that decision was also a man. *See id.*, at 624-625, 107 S.Ct., at 1447-1448. If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination "because of . . . sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.

Courts have had little trouble with that principle in cases like *Johnson*, where an employee claims to have been passed over for a job or promotion. But when the issue arises in the context of a "hostile environment" sexual harassment claim, the state and federal courts have taken a bewildering variety of stances. Some, like the Fifth Circuit in this case, have held that same-sex sexual harassment claims are never cognizable under Title VII. *See also, e.g., Goluszek v. H.P. Smith*, 697 F. Supp. 1452 (N.D. Ill. 1988). Other decisions say that such claims are actionable only if the plaintiff can prove that the harasser is homosexual (and thus presumably motivated by sexual desire). *Compare McWilliams v. Fairfax County Board of Supervisors*, 72



F.3d 1191 (C.A.4 1996), *with Wrightson v. Pizza Hut of America*, 99 F.3d 138 (C.A.4 1996). Still others suggest that workplace harassment that is sexual in content is always actionable, regardless of the harasser's sex, sexual orientation, or motivations. *See Doe v. Belleville*, 119 F.3d 563 (C.A.7 1997).

We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] . . . because of . . . sex" in the "terms" or "conditions" of employment. **Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.**

....

We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Harris, supra*, at 23, 114 S.Ct., at 371. In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field-even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. **The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.**

*Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (emphasis added). By this test, summary judgment should be denied. Sorge produced evidence that he was subjected to loud, incredibly offensive lyrics approximately 15-20 times per day. He testified that he was personally offended, embarrassed to hear the song with women in the workplace around



him, and offended on behalf of the women and homosexuals in his own family and circle of friends. Furthermore, the lyrics were hardly subtle or innocuous – the words "faggot" and "bitch" featured prominently along with a crass reference to menstruation, and appear from the context of the song to actually be directed as insults to an otherwise straight man. From this evidence, quantitative and qualitative, a jury could easily conclude that these actions altered the "terms and conditions" of Sorge's employment at Yelp both from his subjective perspective and from a position of objective reasonableness. In fact, Plaintiff nearly moved for partial summary judgment on the violation, and would still invite the Court to consider granting summary judgment for Plaintiff as non-movant under FRCP 56(f) on Yelp's liability for fomenting a hostile work environment. If the Court declines to go that far on summary judgment, Plaintiff's hostile work environment claim should still most decidedly be presented to the jury for final determination.

## VI. THE RETALIATION CLAIM SURVIVES.

"A plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. At the summary judgment stage, the prima facie case need not be proved by a preponderance of the evidence." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). Once the prima facie case is established, the burden shifts back to the employer to articulate a non-discriminatory motive for termination. If the employer carries that burden, the employee must then offer proof that the proffered motive by the employer is pretext. *Yartzoff*, 809 F.2d at 1374 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)). In this case, the 24-hour timeframe, Defendant's hostility to the complaint, and Defendant's shifting reasons for the termination support sending the retaliation claim to the jury as well.

Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376. Proximity of time between a protected activity and an adverse action may support an inference of



causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000); *Villarimo v. Aloha Island Air*, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.") (internal quotation marks and citation omitted); *and see Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)(a "reasonable period of time"); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir.1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation)); *see also Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) (finding causation element satisfied where "a mere nine days lapsed between [plaintiff's] complaints of discrimination . . . and her termination."). Importantly for this case, the Ninth Circuit has also "held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507 (citing *Strother v. Southern Calif. Permanent Medical Grp.*, 79 F.3d 859, 870-71 (9th Cir. 1996)); *see also Lopez v. MauiSun Computer Sys. Inc.*, Case No. CV-12-00414-TUC-BPV at *26 (D. Ariz. September 22, 2016). Plaintiff suggests that the less-than-24-hour time frame between his complaint to Susa and his discharge the next morning more than qualifies to establish causation on summary judgment.

Thought the timing alone could be enough to send this case to a jury under *Passantino*, Plaintiff offers two more reasons in addition to the timing. First, Defendant (through Susa) was hostile to his complaint about the song lyrics, saying that it was "company culture" and that Sorge should just "get over it." Sorge Decl. ¶¶ 14-16. A hostile reaction to whistleblowing is further evidence of a causal connection. *See Waters v. Churchill*, 511 U.S. 661, 681-682 (1994); *see also Tamosaitis v. URS Inc.*, 781 F. 3d 468, 481-482 (9th Cir. 2015); *Keyser v. Sacramento City Unified School District*, 265 F. 3d 741, 751-752 (9th Cir. 2001). The hostility stands out even more in light of the very strongly worded "no tolerance" policy that would appear to completely bar the playing of a song with lyrics such as those in this case, not to mention requiring a manager like Susa to report it himself. Sorge Decl., Ex. B; *but see id.,* Ex. E (Yelp's Response to First Set of Admission Nos. 2-6). It is inexplicable why Yelp thinks these lyrics would not be a violation of its policy.



Second, the Defendant gave shifting or changing reasons for its actions. *See Hernandez v. Hughes Missile Systems Co.*, 362 F. 3d 564, 569 (9th Cir. 2004); *Payne v. Norwest Corporation,* 113 F. 3d 1079, 1080 (9th Cir. 1997); *Lindahl v. Air France,* 930 F. 3d 1434, 1438 (9th Cir. 1991); *and see E.E.O.C. v. Sears Roebuck & Co.,* 243 F.3d 846, 853 (4th Cir. 2001) ("[A] factfinder could infer from the late appearance of [the employer's] current justification that it is a post-hoc rationale, not a legitimate explanation for [its] decision not to hire [the employee]."); *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted … by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) ( "[W]hen a company, at different times, gives different and arguably inconsistent explanations [regarding its reasons for terminating an employee], a jury may infer that the articulated reasons are pretextual."); *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

In this case, not only did Yelp give a different reason under oath than it did in its actual termination paperwork – Compare Resp. to SOF ¶¶ 46-49 with "Not a good Cultural Fit" (Resp. to SOF ¶ 96 [Sorge Decl., Ex. C (termination paperwork)]) – <u>the language of the termination paperwork mirrors that of Matthew Susa in expressing hostility to Sorge's complaint</u>. Resp. to SOF ¶¶ 96-97. It is further undisputed that the decision to terminate Sorge did not take place until <u>after</u> he complained to Susa about the offensive song lyrics. Resp. to SOF ¶¶ 41, 95. Together with the incredible close temporal proximity, these reasons are sufficient to deny the Motion.

## VII.  CONCLUSION

It is difficult to imagine why Yelp has defended its decision to allow such an inappropriate song to blast through its workspace in the name of "corporate culture," rather than exhibit more appropriate sensitivity towards the maturing, #MeToo times where culture as a whole appears to be headed. The Plaintiff does not ask the Court to change the law or extend it, but simply to enforce it even-handedly to find that a genuine issue of material fact exists as to whether the Defendant a) created a hostile work environment for Plaintiff and b) retaliated against Plaintiff for his protected activity. The Motion should be denied on both counts.



Dated this 25th day of February, 2019,

                              Joshua Carden Law Firm, P.C.

                              By: s/Joshua W. Carden
                              Joshua W. Carden
                              *Attorneys for Plaintiff*
                              *Joseph Sorge*

