L. Eric Dowell, SBN 011458
Alexandra J. Gill, SBN 027506
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:  (602) 778-3700
Fax:  (602) 778-3750
Eric.Dowell@OgletreeDeakins.com
Alexandra.Gill@OgletreeDeakins.com

*Attorneys for Defendant Yelp Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Sorge, | No. 2:17-cv-04518-SMM |
| Plaintiff, | **DEFENDANT YELP INC.'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| Yelp, Inc., | |
| Defendant. | |

Defendant Yelp Inc. ("Yelp") replies to Plaintiff Joseph Sorge's ("Sorge") Response to Yelp's Motion for Summary Judgment.  This Reply is supported by the following Memorandum of Points and Authorities.

## I.    INTRODUCTION

Sorge alleges Yelp created a hostile work environment by allowing a song to be played on its sales floor he believed contained lyrics that were "demeaning to women and homosexuals." [1]  He further alleges he was fired in retaliation for complaining about the Song. Yelp is entitled to summary judgment on Sorge's Title VII claims because Sorge, who is neither female nor homosexual, is not a member of these protected classes and was not targeted based on his sex or sexual orientation by the allegedly offensive Song lyrics.

---

[1] The song is "Straight to the Bank" by 50 Cent, hereinafter "the Song".

When Sorge argues Title VII protects men and women from sexual harassment, he misses the point—a sexual harassment claim under Title VII requires the allegedly offending conduct to have been directed at him based on *his sex* or *his sexual orientation*. Sorge's allegations and admissions confirm that the allegedly offensive Song lyrics were not directed at him or based on his sex or sexual orientation.

Sorge also fails to address Yelp's argument that a Title VII retaliation claim cannot survive when the underlying, allegedly protected activity—Sorge's alleged expression of concern to his supervisor Matthew Susa ("Susa") about the Song lyrics—is not protected activity under Title VII. Even accepting as true that Sorge expressed concern about the Song to Susa, his conduct was not protected activity because he was never the recipient of the allegedly offensive behavior based on his sex or sexual orientation.

Instead of addressing this argument, Sorge argues Yelp provided shifting explanations for its decision to terminate him and that the temporal proximity between his alleged complaints about the Song and his termination supports an inference of retaliatory intent. However, Yelp's explanations for Sorge's termination are entirely consistent and compatible and have never changed. Furthermore, even if the timeline led the Court to infer a prima facie case of retaliation, Yelp has provided legitimate, non-discriminatory reasons for Sorge's termination and Sorge's temporal proximity argument is insufficient to show pretext because there were multiple intervening events between Sorge's alleged conversation with Susa about the Song and his subsequent termination. Sorge has proffered no evidence to contradict or question the truth of Yelp's stated reasons for termination except his own insufficient and self-serving speculation.

Sorge ignores, and therefore concedes, Yelp's primary arguments. Instead of responding, he raises irrelevant arguments based on mischaracterizations of Yelp's Motion that do not affect the outcome. The Court should grant Yelp's Motion and dismiss Sorge's claims with prejudice.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

## II.     LEGAL ANALYSIS

### A.     Yelp is Entitled to Summary Judgment on Sorge's Claim for Sexual Harassment/Hostile Work Environment.

A plaintiff asserting a claim under Title VII for sexual harassment under a hostile work environment theory must demonstrate that he was subjected to a hostile work environment and that the employer is liable for the harassment. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002). To demonstrate a prima facie case of hostile work environment, Sorge must prove: (1) he was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (internal quotations omitted). Sexual harassment/hostile work environment is actionable under Title VII only to the extent "it occurs because of the plaintiff's sex." *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 874 (9th Cir. 2001) (internal quotations omitted).

### 1.     Sorge's Hostile Work Environment Claim Fails Because Sorge did not Experience Misconduct Based on His Sex or Sexual Orientation.

Sorge's sexual harassment/hostile work environment claim fails because he does not, and cannot, allege that he experienced sexual harassment because of *his sex or sexual orientation*. [Mot., Dkt. 29 at 7]. Sorge alleged he was offended on behalf of two groups he believes are demeaned by the Song's lyrics—women and homosexuals. [SOF ¶¶ 58-62; Compl., Dkt. 1 at 4-6].  Yet, the Ninth Circuit has addressed this issue directly, holding that exposure to language potentially demeaning toward groups of which the plaintiff is not a member cannot support a claim under Title VII. *Nichols*, 256 F.3d at 874; *See also Patee v. Pacific Northwesten Bell Tl. Co.*, 803 F.2d 476, 477 (9th Cir. 1986) (Sexual harassment actionable under Title VII only to the extent "it occurs 'because of' the plaintiff's sex."); *see also Equal Employment Opportunity Comm. V. L&W Supply Corp.*, No 2:07-cv-1364 JWS, 2008 WL 11339622, at *3-4 (D. Ariz. Feb. 12, 20087) (adopting

*Patee* and granting summary judgment on the plaintiff's discrimination claim where he was not a member of the protected class that was the target of the alleged discrimination and noting "[t]he Ninth Circuit has not accepted indirect discrimination as a basis for a Title VII claim").

In his Response, Sorge mischaracterizes Yelp's argument, stating "Yelp's argument is that … <u>no amount</u> of sexually explicit or demeaning lyrics … can ever create a hostile environment for a straight white man." [Resp., Dkt. 40 at 4]. Sorge cites and quotes at length the Supreme Court's decision in *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998) to show that the Supreme Court has "protected men, not just women, from sexually hostile work environments under Title VII[.]" [Resp., Dkt. 40 at 6].

Yelp, however, does not take issue with the holding in *Oncale* or the other cases Sorge cites because they are inapposite here. Yelp does not contend that Title VII protects only women from a sexually hostile work environment. Rather, Yelp contends that Sorge's Title VII claim fails because he did not complain of conduct that was offensive or demeaning to other heterosexual men, but because he allegedly complained of conduct he believed was offensive or demeaning to women and homosexuals. In holding that Title VII prohibits same-sex discrimination "because of … sex," the Supreme Court implicitly acknowledged that conduct is only actionable under Title VII when it occurs "because of … sex." *Id.*; *Nichols*, 256 F.3d at 874. Sorge's claim fails because the actions he accuses Yelp of taking did not target him based on *his* sex, or *his* sexual orientation.

**2.    Sorge Cannot Change His Allegations at Summary Judgment Because it would Prejudice Yelp.**

At the commencement of this litigation, Sorge claimed that the Song Yelp allowed to be played on the sales floor contained lyrics that were "demeaning to women and homosexuals" and that he complained to Yelp on their behalf. [SOF ¶¶ 58; 62, Compl., Dkt. 1 at 4-6]. In his Response, Sorge reaffirms the scope of his concern, stating "He counts both women and homosexuals among his family and friends, and was embarrassed

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

to be hearing those lyrics with women in the workplace." [Resp., Dkt. 40 at 4]. Yet, recognizing he is neither a woman nor homosexual and not in the protected class allegedly targeted by the Song, Sorge now claims for the first time that the Song actually targets "an otherwise straight man," because it implies the hypothetical straight man in the Song—the "Homey"—is like a woman on her menstrual cycle and a homosexual. *Id.* at 4; 8.

Sorge is not merely pleading in the alternative, but completely changing his theory of the case.  Sorge cannot, after the close of discovery and at summary judgment, change the very substance of what allegedly concerned him and what he allegedly complained about—lyrics that were offensive "to women and homosexuals." [Compl., Dkt. 1 at 4]. The Ninth Circuit does not permit new theories of cases to be raised at summary judgment, especially where the applicable Complaint does not provide sufficient notice for a defendant to address the new theory. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("After having focused on intentional discrimination in their complaint and during discovery, the employees cannot turn around and surprise the company at the summary judgment stage on the theory that an allegation of disparate treatment in the complaint is sufficient to encompass a disparate impact theory of liability").

Here, Sorge's new theory of liability, that the Song actually targeted *him* on the basis of *his* gender, is entirely inconsistent with his Complaint. Sorge offers no evidence or legal argument to support his new theory, which comes long after the close of discovery and the deadline for amending his pleadings. The Court cannot permit Sorge to argue his new theory because it would prejudice Yelp by denying it the benefit of discovery and other procedural opportunities to address the issue. *See also Patel v. City of Long Beach*, 564 Fed. App'x. 881, 882 (9th Cir. 2014) ("[A] plaintiff cannot raise a new theory for the first time in opposition to summary judgment." *Citing Coleman*, 232 F.3d at 1292).

**3.    Sorge's Hostile Work Environment Claim Fails Because Yelp's Alleged Conduct was not Severe or Pervasive and did not Alter the Conditions of his Employment.**

Sorge's Response argues the frequency with which snippets of the Song played on the sales floor made the work environment hostile. [Resp., Dkt. 40 at 7]. However, in its

Motion, Yelp demonstrated that no reasonable trier of fact could conclude that Yelp's alleged conduct—occasionally playing short snippets of the Song on the sales floor—rises to the level of severity or pervasiveness necessary to support Sorge's claim. [Mot., Dkt. 29 at 10-12].

To support a claim for Hostile Work Environment under Title VII, the work environment must be both subjectively and objectively hostile and abusive, meaning it must be hostile and abusive both to the alleged victim and to a reasonable person. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). It must also be sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Craig*, 496 F.3d at 1054.

Many courts have held that the occasional playing or repetition of offensive song lyrics is not sufficiently severe or pervasive to support a hostile work environment claim under Title VII. *See Stevens v. Life Care Centers of Am., Inc.*, No. 4:06-cv-79-SEB-WGH, 2008 WL 4443089 (S.D. Ind. Sep. 28, 2008) (Holding that repetition of allegedly offensive lyrics from the same musician, 50 Cent, where not directed at anyone, was not actionable sexual harassment that supports a hostile environment claim); *See also Small v. KS Engineers PC*, No. 08-3458 (GEB), 2010 WL 1705002, at *3 (D.N.J. Apr. 26, 2010) (dismissing the plaintiff's sexual harassment claim where the alleged coworkers sang rap songs to him in a derogatory manner and finding that "the singing of derogatory songs in Plaintiff's presence, while possibly offensive, is not objectively hostile so as to amount to being a physical threat, humiliation, or detriment to work performance); *See also Swann v. Roadway Express, Inc.*, No Civ.1:02 CV 01053, 2004 WL 1166651, at *4 (M.D.N.C. May 14, 2004) ("A single offensive song played periodically on a radio station in the workplace is not an actionable violation of Title VII); *See also Bahri v. Home Depot USA, Inc.*, 242 F. Supp. 2d 922, 951 (D. Or. 2002) (although plaintiff claimed that her supervisor "repeatedly" referred to her and other female employees with language she found objectionable, the evidence fell "far short" of demonstrating sexual harassment);

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 2415 EAST CAMELBACK ROAD, SUITE 800 PHOENIX, ARIZONA 85016

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

Here, ten to thirty seconds of the Song were played over a music streaming station. [SOF ¶ 7]. Sorge did not keep any records or notes but speculates that the Song was played somewhere between four or five times per day, up to fifteen or twenty times per day. [SOF ¶ 63]. Taking the higher numbers of Sorge's speculation as true, the total length of the Song's play time would be only ten minutes of a full workday. Even if the entire Song were played (and Sorge does not allege it was), the play time would be only about an hour. The occasional repetition of the segment of the Song is even less pervasive because it was only one among many team songs that played on the Yelp sales floor. [SOF ¶¶ 7-8]. Sorge admits there was "generally music playing" on the Yelp sales floor, both when teams made a sale and "additional music" during breaks. *Id.* As shown by *Stevens, Small, Swann,* and *Bahri*, mere repetition does not make conduct sufficiently pervasive to support a hostile work environment claim. Further, as in *Stevens*, *Small*, and *Swann*, while Sorge may have considered the lyrics "offensive," they were not so objectively hostile to support a sexual harassment claim. *Small*, 2010 WL 1705002, at *3; Stevens, 2008 WL 4443089, at *13. *See also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (finding no hostile work environment where supervisor's outbursts were "offensive" but "about other people" and he "never directed a sexual insult" at the plaintiff).

Finally, in addition to being severe or pervasive, the alleged conduct must alter the conditions of Sorge's employment. *Craig*, 496 F.3d at 1054. The Ninth Circuit has held "[i]t is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position." *Reynaga v. Roseberg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). In *Reynaga*, the Ninth Circuit found conduct sufficiently severe or pervasive to alter the conditions of employment where the conduct was so severe it led to confrontations between the plaintiff and his supervisor in the workplace, led the plaintiff to register verbal and written complaints with management, required management to rearrange shifts to keep

the plaintiff and supervisor apart, and eventually led plaintiff to leave his position. *Reynaga*, 847 F.3d at 687.

Unlike the plaintiff in *Reynaga*, Sorge has never alleged that hearing the Song played affected his work or the conditions of his employment in any way. Sorge believed he was in the top 50 to 75 percent of his sales team in terms of his production and that he was the "best" sales person in his group. [SOF ¶¶ 25-27]. Sorge did not complain about the Song until *after* his disciplinary meeting with Susa and Kennedy on the morning of June 16, 2016, at the earliest. [Resp., Dkt. 40 at 2]. No one ever complained to Sorge about the Song, nor did Sorge ask anyone if they found the Song to be offensive [SOF ¶ 68-70]. Sorge even admits that "everyone" sang along to the Song, including "probably" him. [SOF ¶¶ 72-73]. A coworker who sat beside Sorge on the sales floor witnessed Sorge singing along to the Song. [SOF ¶ 74]. Far from alleging the Song altered the conditions of his employment, Sorge participated willingly and believed his employment conditions were conducive to excellent performance.

**B.      Sorge's Retaliation Claim Fails as a Matter of Law.**

To establish a prima facie case of retaliation, Sorge must show that (1) he engaged in a protected activity; (2) he was thereafter subjected by his employer to an adverse action; and (3) a causal link existed between the protected activity and the adverse employment action. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). If Sorge presents a prima facie case of retaliation, then Yelp must proffer a legitimate, non-retaliatory reason for its actions. *Id.* Sorge then bears the ultimate burden of submitting evidence that Yelp's given reason is a pretext for retaliation. *Id.*

**1.      Sorge's Prima Facie Case Fails Because He Cannot Demonstrate He Engaged in Protected Activity.**

Sorge cannot satisfy the first element of his claim under *Porter v. Cal Dep't of Corr.*, 419 F.3d at 894 because the alleged conduct must be protected conduct under Title VII to sustain a claim for retaliation. Sorge's conduct was not protected under Title VII. Therefore, it cannot sustain a claim for retaliation.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., 2415 EAST CAMELBACK ROAD, SUITE 800 PHOENIX, ARIZONA 85016

Although courts liberally construe the anti-retaliation provision of Title VII, to show protected activity, the conduct allegedly complained of "must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988); *Quednau v. Arizona*, No. CV-12-571-PHX-GMS, 2013 WL 5314358, at *3 (D. Ariz. Sep. 20, 2013) ("While an employee may fail to prove the alleged unlawful employment practice but still prevail on a retaliation claim, 'the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation'") (quoting *Learned*, 860 F.2d at 932)); *Maner v. Dignity Health*, No. CV16-3651-PHX DGC, 2018 WL 4927250, at *8 (D. Ariz. Oct. 11, 2018).

Even assuming, for summary judgment, that Sorge complained about the allegedly offensive Song to Susa on June 16, 2016, Plaintiff's claim fails because he did not oppose conduct that fell within the protection of Title VII. *Maner*, 2018 WL 4927250, at *8. Sorge alleges that he told Susa the Song was offensive because it was "denigrating to homosexuals and women." [SOF ¶ 77]. However, the Ninth Circuit has clarified there can be no violation of Title VII where the plaintiff is not a member of the class that was the target of the allegedly hostile conduct. *Patee*, 803 F.2d at 477. Therefore, like the plaintiff in *Maner*, Sorge did not have an "objectively reasonable" belief he was complaining of conduct that violated Title VII. Sorge cannot demonstrate that he objectively, or even subjectively, experienced a hostile work environment based on his sex. Sorge's alleged complaint constitutes no protected activity under Title VII. *Learned*, 860 F.2d at 932; *Maner*, 2018 WL 4927250, at *8. Sorge ignores, and therefore concedes, this argument.

### 2. Sorge's Retaliation Claim Fails Because Yelp Offered Legitimate, Non-Discriminatory Reasons for the Termination That Sorge Does Not Dispute.

Even if Sorge could show a prima facie case of retaliation, Yelp provided valid, nondiscriminatory reasons for the termination which Sorge does not refute. Yelp terminated Sorge's employment due to his repeated unprofessional and disrespectful behavior, including appearing disengaged in a training meeting and repeatedly failing to follow Yelp's sales process, despite receiving coaching on numerous occasions. [SOF ¶

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

9

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

46-48]. Yelp ultimately terminated Sorge's employment after receiving the report he told a person he apparently believed to be an interview candidate to "run while [he] still can." [SOF ¶ 49]. Even if Sorge alleges he did not say "run while you still can" as reported by multiple Yelp employees, Sorge "must do more than show that [Yelp's] proffered reasons are false. 'Rather, courts only require that an employer honestly believe its reasons for its actions, even if its reason is foolish or trivial or even baseless.'" *Kent v. City of Tucson*, No. CV 09-0280 TUC-FRZ (JM), 2011 WL 7637263, at *6 (D. Ariz. Sep. 26, 2011) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)). Yelp believed its reasons for its actions because it had credible reports from multiple sources. [SOF ¶ 42]. Yelp has provided reasons for its actions supported by substantial evidence. Sorge has not offered any evidence beyond his own self-serving speculations showing Yelp's reasons for terminating him were pretext, as he must to succeed in his claim. *Porter*, 419 F.3d at 894.

###     a.    Sorge's "Shifting or Changing Reasons" Argument Fails Because Yelp's Position has Remained Consistent.

Sorge argues Yelp's reasons for terminating him were pretextual because Yelp gave "shifting or changing reasons for its actions." [Resp., Dkt. 40 at 10]. Sorge claims the reasons stated during Sorge's termination meeting are incompatible with the reason on his termination paperwork, and those shifting reasons demonstrate pretext and support an inference of a causal link between his alleged conservation with Susa about the Song and his termination. [*Id.* at 10].

However, it is well established that "separate reasons offered by an employer are not considered shifting if they are not incompatible" *Culver v. Qwest Commc'ns. Corp.*, 306 Fed. App'x. 403, 405 (9th Cir. 2009) (internal quotations omitted). Yelp has never changed its explanation for Sorge's termination, and the reasons Yelp gave were entirely consistent. Not only are these reasons for termination valid and nondiscriminatory, they are consistent with Sorge's claim that his termination paperwork states he was terminated because he was not a good fit in Yelp's workplace culture. [Resp., Dkt. 40 at 10]. Yelp

maintains a workplace culture of professionalism and respect; Sorge proved himself unable or unwilling to comport himself under Yelp's workplace culture by engaging in the behaviors described in SOF ¶¶ 46-48. The two positions are entirely consistent, and explain Yelp's decision to terminate Sorge.

> **b. Sorge's Temporal Proximity Argument Fails Because Sorge Committed Multiple Intervening Actions Which Justified his Termination.**

Sorge also argues the 24-hour interval in time between his complaint and his termination shows pretext by establishing a causal link between his protected activity and his termination. [Resp., Dkt. 40 at 8-9]. While timing of an adverse employment action *can* create an inference of causality, it does not necessarily create such an inference, or require a case to proceed to the finder of fact. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d. 493, 507 (2000). The Ninth Circuit has cautioned "that a specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per so too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003). Indeed, the court in *Passantino* permitted evidence of retaliation based on timing to go to the jury only where "the evidence as a whole does not compel" the conclusion that the adverse employment action was not due to retaliatory motives. *Passantino*, 212 F.3d at 507.

Here, by contrast, the evidence compels the conclusion that Sorge's termination was not due to retaliatory motives. Even if Sorge's allegations regarding the interval between his complaint and his termination meet the causality requirement for the purposes of showing a prima facie case of retaliation, they cannot rebut Yelp's given reasons for the termination. Multiple intervening events undercut Sorge's argument. First, he alleges he raised his concern about the Song to Susa at midday on June 16, 2016, after a meeting with Susa and Kennedy in which Sorge was very disrespectful and combative [Resp., Dkt. 40 at 2; SOF ¶ 23-30]. Following that, Sorge was again disrespectful and inattentive in a training meeting and made the insubordinate comment to the employee he evidently believed was

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

an interview candidate. [SOF ¶ 31-45]. Sorge was terminated the following day, June 17, 2016. [SOF ¶ 46]. The decision came quickly in response to Sorge's consistent and increasingly problematic behavior, not in response to his alleged conversation about the Song with Susa. Considering the brevity of Sorge's employment with Yelp, the rapid downward trajectory of his behavior at work, and the multiple intervening reasons for termination, the timeline is not sufficient evidence of pretext to send this issue to the jury under *Passantino*.

### c.   Sorge's Hostile Reaction Argument Fails Because Susa's Response to Sorge's Complaint was Not Hostile.

Sorge argues when he voiced his concern about the Song to Susa following their meeting with Kennedy on June 16, 2016, Susa's hostile reaction provided evidence of a causal link between Sorge's action and his subsequent termination. [Resp., Dkt. 40 at 9]. Sorge's argument must fail because Susa's reaction does not rise to the level of hostility contemplated by the cases Sorge cites. *Waters v. Churchill*, 511 U.S. 661, 681-682 (1994) requires Sorge to "produce enough evidence to create a material issue of disputed fact about petitioners' actual motivation."

In *Waters*, a nurse complained on multiple occasions to her supervisor about a hospital policy. Following her complaints, hospital management took certain actions that, viewed in the light most favorable to plaintiff, would show hostility based on her complaint. These actions included negative performance evaluations and being dismissed from an operating room while assisting on a surgery and contrary to the surgeon's wishes. *Id.* at 681 (citing *Churchill v. Waters*, 977 F.2d 1114 (7th Cir. 1992) (reversed on appeal)). Similarly, in *Tamosaitis v. URS Inc.*, 781 F.3d 468, 481-82 (9th Cir. 2015), plaintiff submitted emails showing defendant reacted to plaintiff's protected activity by deciding to remove plaintiff from the project and location where he worked. In those cases, the courts concluded that such extreme reactions to plaintiffs' complaints created a fact issue about defendants' actual motivations.

Here, Sorge alleges Susa merely said playing the Song was "company culture" and Sorge should "get over it." [Resp., Dkt. 40 at 9]. Sorge offers no evidence beyond his own

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

recollection of the event, unlike the plaintiffs in both *Waters* and *Tamosaitis*. Sorge's recollection of Susa's statements does not rise to the level of hostile reaction contemplated by *Waters* and *Tamosaitis*. Susa did not oppose, attempt to restrict, or offer any other hostile reaction to Sorge's complaint.  His comments were and attempt to explain to Sorge why he elected not to take action based on Sorge's complaint and to *counsel* Sorge on how to *maintain* his employment and bring himself into alignment with Yelp's employee expectations. Therefore, Susa's reaction to Sorge's complaint cannot forestall summary judgment.

## IV.    CONCLUSION

Sorge has not and cannot demonstrate that he experienced a hostile work environment because of *his sex or his sexual orientation*. Nor can he show that Yelp terminated him in retaliation for allegedly complaining about a song he found offensive to "women and homosexuals"; even if he could, he cannot show that his complaint constituted protected activity under Title VII, or that Yelp's given reasons for his termination were pretext for retaliatory intent. Sorge cannot meet his burden and his Title VII claims must be dismissed.

DATED this 25th day of March 2019.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: s/ L. Eric Dowell
    L. Eric Dowell
    Alexandra J. Gill
    2415 East Camelback Road, Suite 800
    Phoenix, Arizona 85016
    *Attorneys for Defendant Yelp Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of March 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Joshua W. Carden
Joshua Carden Law Firm, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, Arizona 85254
joshua@cardenlawfirm.com
*Attorneys for Plaintiff Joseph Sorge*


s/ Susan Stimson

37843427.1

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016